IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| WILLIE LEE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 5:06-0149 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**M E M O R A N D U M   O P I N I O N**

    This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. This case is presently pending before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 12.) and Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.). Both parties have consented in writing to a decision by the United States Magistrate Judge.

    The Plaintiff, Willie Lee (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on August 13, 2003, (protective filing date), respectively, alleging disability as of September 11, 2001, due to a torn rotator cuff, torn ligaments in his shoulder, and diabetes. (Tr. at 12-13, 43-45, 55.) The claim was denied initially and upon reconsideration.[1] (Tr. at 30-32, 39-41.) On June 22, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 42.) The hearing was held on September 19, 2005, before the Honorable William B. Russell. (Tr.

---

[1] Claimant filed prior applications for DIB and SSI benefits on January 4, 2002. (Tr. at 12.) The claims were denied initially and were not further pursued by Claimant. (*Id.*)

at 183-212.) By decision dated December 19, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-21.) The ALJ's decision became the final decision of the Commissioner on January 31, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On February 28, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffered from non-insulin dependent diabetes mellitus, a back disorder, and status post shoulder injury with associated pain, which were severe impairments. (Tr. at 15.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant had a residual functional capacity for a significant amount of work at the sedentary level of exertion, with the following limitations:

> [T]he claimant should be allowed a sit/stand option, with an opportunity to change positions every hour. He should avoid tasks that require more than occasional climbing and should avoid working with hazardous machinery and heights. He should also avoid tasks that require more than occasional reaching overhead.

(Tr. at 18.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Id.) On the basis of testimony of a Vocational Expert ("VE") and Medical Expert ("ME") taken at the administrative hearing, the ALJ nonetheless concluded, that Claimant could perform jobs such as a surveillance systems monitor, bench assembler, and small machine operator, at the sedentary level of exertion. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 20-21.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 10, 1959, and was 46 years old at the time of the administrative hearing. (Tr. at 14, 19, 43.) Claimant has a ninth grade education and a Generalized Equivalency Diploma. (Tr. at 14-15, 59, 191.) In the past, he worked as a truck driver and laborer. (Tr. at 13, 192-94, 205-06.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in assessing Claimant's pain and credibility and (2) relied upon only part of the evidence of record. (Pl.'s Br. at 8-12.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 9-14.)

Analysis.

1. Pain and Credibility Assessment.

Claimant first argues that the ALJ improperly evaluated his subjective complaints of pain and erred in finding Claimant not entirely credible. (Pl.'s Br. at 8-10.) Specifically, he alleges that the ALJ rejected his complaints of pain because he failed to produce medical evidence to support the severity of his pain. (Id. at 9.) The Commissioner argues that the ALJ's analysis was in accordance with the applicable law and Regulations. (Def.'s Br. at 9-12.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such

evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (I) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other

evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 16-17.) Claimant does not assert that the ALJ failed to engage in the two-step analysis. Rather, Claimant argues that the ALJ erred in evaluating the intensity and persistence of the pain and subjective complaints to the extent it affects his ability to work. The ALJ acknowledged Claimant's treatment but noted that it was inconsistent and intermittent and consisted primarily of only requests for medication refills. (Tr. at 17.) The ALJ noted that on May 23, 2003, Dr. Frederick B. Morgan, D.O., administered a steroid injection to Claimant's left shoulder to alleviate pain and advised Claimant to return if the pain persisted. (Tr.

7

at 15, 17, 119.) The ALJ also noted that Claimant was not treated again by Dr. Morgan (Tr. at 17.) Contrary to the ALJ's assertion, Claimant returned to Dr. Morgan and received a second steroid injection to his left shoulder on August 11, 2003. (Tr. at 117.) However, consistent with the ALJ's opinion, the medical evidence did not indicate that Claimant received more than two injections or that he was further treated by Dr. Morgan.

The ALJ further noted that Claimant was discharged from physical therapy after missing several appointments. (Tr. at 17, 135.) The medical record demonstrates that after 14 physical therapy treatments on his left shoulder, Claimant was discharged because he met all the physical therapy goals and was independent in his self-management techniques. (Tr. at 150-59.) Claimant however, continued to receive physical therapy on his back. (Tr. at 148-151.) On November 21, 2003, he was discharged from such therapy because his medical insurance permitted only a limited number of visits. (Tr. at 143-44.) Claimant re-initiated his physical therapy from March 16, 2004, through April 21, 2004. (Tr. at 135-41.) On May 11, 2004, however, he was discharged because he failed to return for additional care. (Tr. at 135.) Claimant asserts that he did not return to his physical therapy because his medical insurance would not cover the sessions. (Pl.'s Br. at 10.) Although it may have been error for the ALJ to consider Claimant's refusal to follow prescribed treatment notwithstanding his inability to pay for it, the Court finds that in view of the other evidence supporting the ALJ's credibility analysis, such error is harmless. See SSR 82-59 (1982). The Court notes that on December 22, 2003, Dr. Gary Craft, M.D., a consultative examiner, opined that Claimant's long-term prognosis for the musculoskeletal system was fair and that his long-term prognosis for diabetes mellitus was good, with weight reduction. (Tr. at 17, 123.) Additionally, a State Agency Consultant completed a physical residual functional capacity assessment in January and June 2004, in which it was determined that Claimant could perform medium exertional work.

(Tr. at 18, 127-34, 168-75.)

The ALJ also considered the factors contained in 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Specifically, the ALJ noted that Claimant performed a wide variety of daily activities including bathing and dressing himself, watching television, walking around the yard, shopping, operating a vehicle without restrictions, and lifting twenty pounds. (Tr. at 17-18, 62-65, 196.) Although Claimant testified that he needed to lie down and nap approximately three hours each day, the ALJ found that the clinical evidence did not support Claimant's allegations. (Tr. at 17-18.) Based on the foregoing, the ALJ concluded that Claimant's subjective complaints of pain were not consistent with the evidence of record. (Tr. at 17.) The ALJ thus found that Claimant's allegations regarding his limitations were not totally credible and that he was able to perform gainful employment at the sedentary level of exertion. (Tr. at 17-18, 20.)

As the Commissioner notes, Claimant reported that his medications, Lortab and Glucophage, caused him to experience dizziness, dry mouth, sleepiness, and blurred vision. (Tr. at 68.) However, the medical records do not evidence any complaints from Claimant regarding the alleged side effects. The medical records reveal that Claimant was consistently prescribed and refilled the same medications. (Tr. at 103-16, 161-67, 176-79.) Despite a reported history of farsightedness, Dr. Craft opined that Claimant's visual acuity was 20/20, uncorrected, in both eyes and that the prognosis for his farsightedness was good. (Tr. at 123.) There is no evidence of record that these side effects limit him from engaging in gainful activity. Nevertheless, in assessing Claimant's residual functional capacity, the ALJ accommodated Claimant's dizziness by restricting him from tasks that require work with hazardous machinery and heights. (Tr. at 18.) With regard to Claimant's back, shoulder, and upper and lower extremities, the Court notes that with the exception of a few instances of decreased range of back and shoulder motion (Tr. at 104, 109-10, 165.), medical records reveal

normal or near normal strength, range of motion, and sensation of his back and shoulder. (Tr. at 117, 119, 122-23.) An x-ray of Claimant's left shoulder on February 7, 2003, was normal. (Tr. at 111.) The records further reveal that Claimant had normal gait and station, negative straight leg raising tests, and normal grip strength. (Tr. at 117, 119, 122-23.)

The ALJ credited Claimant's subjective complaints only to the extent that he concluded he had a maximum capacity to perform a significant amount of sedentary work. (Tr. at 17-18, 20.) Despite Claimant's complaints and alleged limitations, the ALJ found that he was not precluded from gainful work. (Id.)

Upon a careful review of the entire record, the Court finds the ALJ's analysis of Claimant's pain and credibility proper and in accordance with the applicable law and Regulations. The ALJ did not find that Claimant suffered no symptoms; he merely found that the symptoms were not as severe as Claimant alleged. (Tr. at 17-18.) The ALJ found that Claimant could perform sedentary work with additional limitations, and therefore took into account some of Claimant's complaints. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence, and Claimant's argument is without merit.

2. Reliance Upon Only Part of Evidence of Record.

Claimant next argues that the ALJ relied upon only part of the evidence of record in denying his claim. (Pl.'s Br. at 10-11.) Claimant argues that the ALJ discounted evidence regarding Claimant's stomach problems and limited education. (Pl.'s Br. at 10.) The Commissioner asserts that Claimant's "unsupported, bare-bones argument must fail." (Def.'s Br. at 12-14.)

Addressing first Claimant's stomach problems, the Court notes that the medical evidence of record contains limited references to any such problems. Claimant identified his stomach problems for the first time in his "Disability Report - Appeal," dated June 10, 2004. (Tr. at 88.) He indicated

that his stomach problems originated on March 2, 2004. (Id.) The medical evidence of record indicates that on March 2, 2004, his treating physician, Dr. Muscari, prescribed him Prilosec. (Tr. at 163.) However, there are no other references in the medical evidence to support any further stomach problems. Thus, the Court finds that the objective medical evidence of record did not establish an impairment that resulted in functional limitations on his ability to do basic work activities as required by the Regulations. See 20 C.F.R. §§ 404.1528(a) - (c), 416.928(a) - (c) (2004). To the extent the ALJ erred in not noting this limited evidence, the Court finds such error is harmless.

With regard to Claimant's limited education, the Court finds that the ALJ properly acknowledged, considered, and evaluated his educational level. At the administrative hearing, the ALJ posed a hypothetical question to the VE asking him to consider an individual

> who has completed the ninth grade but whose reading is less. However, the individual probably reads on a seventh-grade level based on demonstrations and on the fact that he was able to successfully [perform] the duties of a long haul truck driver and possess a commercial driver's license.

(Tr. at 206.) In response to the ALJ's hypothetical question, the VE asserted that Claimant was able to perform a variety of unskilled jobs. (Tr. at 206-08.) The ALJ noted in his decision that Claimant completed the ninth grade and that his ability to read and write was "very limited." (Tr. at 13-15, 19.) However, the ALJ further noted that after Claimant left high school, he attained and maintained the requirements of a commercial driver's license and functioned as a truck driver for several years. (Tr. at 15, 77, 189-90, 192.) Additionally, the ALJ noted that Claimant was able to concentrate well enough to watch television, listen to the radio, explain his medical and work histories during the administrative hearing, and perform activities of daily living including caring for his personal needs, preparing meals, maintaining familial relationships, and engaging in conversations. (Tr. at 15-16, 62-66, 196.) The ALJ also noted that Claimant's physicians indicated that he related well and was

cooperative. (Tr. at 16, 122-23.) Based on the foregoing, it is clear that the ALJ acknowledged and considered Claimant's limited education.

The Court finds that the ALJ properly considered all of the evidence of record, including the evidence of Claimant's limited education. The Court finds Claimant's argument without merit, and therefore, further finds that the ALJ's decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Doc. No. 12.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: February 26, 2007.

R. Clarke VanDervort
United States Magistrate Judge